Number 181526 Scottsdale Insurance Company versus Kennethy L. Byrne et al. May it please the Court, Alexis Rogoski for Scottsdale Insurance Company, the appellant with me at council table is Edward Carlton. I would request the opportunity to reserve two minutes for rebuttal. You may. Scottsdale appeals the final judgment that was entered in favor of the funds. The funds were the assignees of Scottsdale's insured wharf. Counsel, we actually know the case quite well. Could you turn first to the duty to defend? The district court said there were at least four claims in the negligence case that at least arguably did not fall within your professional exclusion. Could you tell us why you think that's wrong? We think the court applied the wrong standard. We think the district court applied a standard that was more in the nature of proximate causation. The district court talked about a claim for source of the underlying injury that determines whether there's a duty to defend. The district court also talked about a recordkeeping claim that in our view was not pled in the complaint, but regardless, recordkeeping would have been incident to wharf's purchase of the properties, management of the properties, financing of the properties, which are all activities that are specifically mentioned in the exclusion. And I believe, I'm trying to think, the district court also mentioned the investment choices. Well, the investment choices wharf made was the purchase of the properties in Rhode Island and Massachusetts. No, no, no. One of the claims had to do with the financing. Hang on. Wharf re-reached its Does that mean wharf went out and got a loan and actually inflated the value of the properties? What that means, Your Honor, is that wharf took out mortgages on the properties in value in excess of their market value. Okay. So how is that property management? Because the definition of professional services also includes the financing of real property. So what happened here, Your Honor, the source of the fund's injury was that when wharf purchased these properties How do we know they were financing real property as opposed to putting the money in their own pockets? What's alleged in the complaint, Your Honor, is that they purchased these three properties with borrowed money and that because of the extent to which they borrowed that money and the inability to generate sufficient revenues from the properties, they were unable to meet the mortgage and tax liabilities. What's alleged in the complaint is that wharf improperly retained certain revenues from one of the properties, the Stone House, as a management fee. But again, all that did was exacerbate their cash flow problems. I mean, this was essentially a situation where the properties failed to generate sufficient cash flow to cover the mortgage and tax liabilities. Counsel, I'm looking at the exclusion, the first exclusion, which says, talks about services and says shall include without limitation purchase, sale, rental, leasing or valuation. So it's your argument, as I understand it, that this purchase of these particular Stone and that that is excluded from coverage and therefore there's no duty to defend a claim which focuses on that? Is that your position? Yes. Our position is that in purchasing real property, financing real property, managing real property, those type of investments, when done on behalf of someone like the funds, is excluded. And once that's excluded, it's your position, as I understand it, that means that it triggers the lack of a duty to defend? Correct. Can I ask you just one? Go ahead. The way I'm reading this, and maybe I'm reading it wrong, there's a description of services at the end of the exclusion. Correct. But the services have to be performed as a real estate broker or agent, a listing agent, a real estate appraiser, a title agent, a title abstractor or searcher, an escrow agent. None of those are anything that would be relevant here, as best I can tell. Then there's real estate developer. Maybe that could be relevant. Was that raised below? Yes, Your Honor. That was raised to the district court? Yes. Did the district court address the real estate developer point? I thought it did not. The district... It's okay, I'll just find out whether it did, but your contention is that you raised below to the district court that you were entitled to the exclusion as a real estate developer? As a real estate developer and a property manager. Okay. And then with respect to property manager, that's the only other one you say qualifies? I believe that's correct, Your Honor. Okay. So with respect to being property manager, the district court was of the view that the classic role of a property manager is different than an investor in the property? I believe that's fair. So isn't that a potential problem for you? Because it would be unclear here whether, although there were services provided, such as financing, they weren't, he says, clearly provided as a property manager, as opposed to somebody who was an investor in the property. Well, it depends on which of the allegations that's directed to. So as long as there's some, then the duty to defend applies. Well, but let me put it this way, Your Honor. If you're looking at the allegations against Wharf as a property manager, I think their failure to pay property taxes because they lack the cash flow falls squarely within that. I think their taking income from the properties as a fee falls squarely in that. And I think the balance of the property, the balance of the problems here resulted out of their role as a real estate developer in purchasing and financing the problems. So I think you have to look at those two aspects of the definition in conjunction. And then just on developer, I'm a little stuck because the district court didn't seem to engage with that particular argument, but assuming it was raised, I mean, one possibility is real estate developers developing from scratch, as opposed to just investing in property. That would be one aspect, yes. But see, that's a problem for you, because then again, some of it could trigger the duty to defend, right, to be a lack of clarity on the point, and then that goes against you. But I think that just because you can develop property from the ground up does not mean that when you purchase a property like the Stone House and renovate it over eight years, that that's not also real estate development. You think it's clear that it is? I think it's clear that it is, yes. Because, you know, again, if you look at the language of the exclusion and the introductory language, it has to involve real estate development, property management, purchase of property, and the financing of property. And if it involves that conduct, then that's sufficient for the exclusion to apply. And Scott Still, in that instance, does not have a duty to defend. I'm not sure that's an adequate answer. You know, as a non-real estate developer looking at this, I would not have thought that this actually was a real estate development. And adding the word involve doesn't seem to help your case much, or at least my understanding is a possibility.  I'm not sure that's a possible understanding of the clause, and, therefore, Judge Saylor was correct. I think, Your Honor, I must respectfully beg to differ, because, again, when you look at the language of the exclusion, what they're trying to address is investments in real property. And in this circumstance, that's exactly what Worf did with the fund's money. It was investments in real property, and the error they're alleged to have committed is taking out too much financing and putting themselves in a position. Yes, but you could have put in investor in real property, and you didn't. Well, we put in the purchase of real property and the financing of real property. You could have been, you might have been better off if you dropped the first sentence of the exclusion. That's right. But you included the first sentence of the exclusion so that the only things that are excluded are actions that are taken as a certain type of actor. And then only certain services, when performed as such an actor, are excluded. So it's true that last sentence describes services that Worf performed. But the exclusion is clearly written to say that fact alone is not enough. Those services have to be performed as a certain type of actor, and then those actors are denominated. So unless you're one of those type of actors, there's no problem. And if there's a lack of clarity as to whether you're a property manager, and assuming you raise the real estate developer issue below, which I'm doubtful about, whether it's clear that you're acting as a real estate developer, that second sentence doesn't help you. Right. I think I was just looking at the transcript, Your Honor, and I think on pages 16 and 17 of the transcript, it was argued that these activities included real estate development as well as property management. But again, when you look at the allegations here, what's alleged is that Worf took the fund's money, purchased a property, redeveloped it, put their money into other properties, and then over leveraged the entire portfolio. I have a different question. Okay, Judge Stahl has a question. I have somewhat different questions on the duty to defend. What is typically the damages if you fail a duty to defend? Is it the policy limit or is it the cost of the duty to defend? And if it's the cost of the duty to defend, didn't you waive that? It includes the cost of the duty to defend. It's contract damages. I don't believe we waived that as to the cost of the duty to defend. No, it's not the full verdict. It's the full verdict in the case, which was a default judgment. It's only our policy limit. And you didn't argue that you were limited on the duty to defend to the cost of the defense. So haven't you waived that issue? They made that argument before the trial court in arguing summary judgment. And at the conclusion of that argument, it was clear that the trial court was either going to award the limit of liability or the default judgment. So they did not pursue it further on the post-trial briefing. But in the initial briefing before the trial court, they did argue that the damages should be limited to the cost of defense. Thank you. You've got two minutes rebuttal. Good morning. May it please the Court, my name is Miranda Jones. I represent the defendants' appellees in this matter, Timothy Byrne and Robert Bolton, as I serve as co-chairman of the Board of Trustees for the Plumbers and Pipefitters Local 51 Pension and Annuity Funds. To address Judge Stahl's initial question that you just asked about that, the case law is fairly clear in Massachusetts under the Liberty Mutual Insurance versus Metropolitan Life Insurance. And the stated rule under Massachusetts law is that if the insurer fails to defend the lawsuit, it is liable for all defense costs. And assuming policy coverage, the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims. So basically you're saying if you don't raise the allocation, you've waived it. Correct. And, in fact, I believe in the lower court when Judge Saylor asked us to, after he ruled on our motions for summary judgment and ruled for both parties to respond with a form of judgment, at that time it was my understanding he was seeking to see whether or not it was the policy limit or if it was the entire default judgment of over $5 million that we were seeking and whether or not there was any allocation. Because in the underlying complaint, when we sued Wharf, we sued them both under a negligence claim and under ERISA. And the ERISA claim is gone as far as I'm concerned. And so I thought at the time when I responded in the form of judgment that there was, under both of the claims, we sought the $5 million initial investment. And so it wouldn't have mattered that the ERISA claim was gone. We still sought it under the negligence claim. And in any event, they didn't raise the question of any allocation? They did not, no. Instead, in the form of judgment, Scottsdale filed a motion for clarification and for reconsideration and then made the assertion that nothing was owed. So with regard to what is before you, a couple of matters I'd like to bring up. One of the things that we have to look at is the policy in its entirety, both the underlying policy and the exclusions that go with it. And one of the things that I raised in my brief was the fact that if you look at the language of the exclusion, that's the particular professional services exclusion, it specifically says that if the exclusion applies, and certainly I'm not conceding that the exclusion applies here, if it does, it applies to the loss. It doesn't apply to the duty to defend. If you read that in conjunction with the settlements and defenses language in the underlying policy,  it's the insurance responsibility to defend, regardless of whether or not the underlying claim is groundless, false, or fraudulent. What about if it's excluded? If it were to be excluded. You shifted, I thought, when you just described it. You said that if the claim, did you mean the claim by the plaintiff in the underlying court suit? Underlying claim, right. Yeah, I understand that the duty to defend exists even if it's groundless, et cetera. Correct. But is there a duty to defend on a claim that is excluded from the policy? Not by the language of the exclusion itself. If you look at the language of the exclusion, all the exclusions in this particular policy say that they apply to the loss, not to the duty to defend. So it's their language. It's Scottsdale's policy, and it's right directly in the language of the exclusion. So you think Judge Saylor didn't need to go through the analysis he did because the exclusion on its face says it applies to loss? Correct, but I appreciate the fact that Judge Saylor did go through, because in case I'm wrong in my arguments for affirmance here. Excuse me? I didn't hear that. You have two different arguments for affirmance. Affirmance. One is Judge Saylor was right on the analysis he used, and the other is, well, he didn't reach this issue of the exclusion language applying to loss. Okay, so let's go back to Judge Saylor's analysis and the question that was put to your brother, was the real estate developer raised below? Well, I would suggest to you that during the oral argument on the motions for assembly judgment, it was raised below, and it had to have been because of the nature. If you read the underlying complaint, you will see that there are 14 paragraphs as to what we allege that Wharf did wrong, and they all lead to Wharf's mismanagement of this $5 million investment. But there were three properties involved. One was the Stonehouse property in Little Compton, Rhode Island, and that was delved into more in the complaint. However, if you look at the two other properties, the Condo Association in Newport and the housing project in North Attleboro, Mass., if you read the complaint, all it says about those properties is Wharf invested in. That's it. There's no allegation that they developed the property. There's nothing similar to it. There's no facts fleshed out at all. There's no claim that there was any wrongdoing with respect to those properties? As the complaint goes on, the further paragraph summarizes that the properties were overleveraged. They all ended up with a zero value due to the fact that Wharf failed to pay the mortgages, failed to pay the real estate taxes, overleveraged the properties. Doesn't that sort of lead you to look at the exclusion that they mishandled the properties?  Because in the underlying complaint, all it said is that Wharf invested in the two properties in North Attleboro and in Newport, Rhode Island, and during the course of discovery, after Scottsdale sued my clients for the petition for declaratory judgment, they never bothered subpoenaing or deposing anybody from Wharf to see what they actually did for activity. So there is no record as to what happened at those two properties, only that they were invested in, whatever that means. So as to those properties, are you saying there's not even, whatever the case might be about the Stonehenge property, what's it called? Stonehouse. Stonehouse. Whatever evidence there might be about the Stonehouse property and whether it would qualify as performance of property manager or developer, there's simply nothing that can support finding a property manager or developer argument as to the other two properties. There's absolutely nothing in the record. I'm sorry, one last thing. If that follows, then your point is the duty to defend triggers, and since they made no allocation argument on the duty to indemnify, they're stuck with the whole thing. Correct. I mean, the exclusion clearly doesn't apply. There's just no basis to say that it applies. So what you're basically saying is that it could have perhaps, but they never raised that issue. Correct. So that if the record supports what you've just said, that's your best argument as to why there was a duty to defend. Well, it's one of my arguments as to why there's a duty to defend, but you'll find nothing in the record as to what happened with those two other properties because Scottsdale never bothered to do discovery on it. And why would their discovery be pertinent if all we're looking at is the allegations of the underlying complaint which describe the other two properties as being nothing more than an investment? Well, I would suggest that... Under Massachusetts law, simply look at the complaint as of the time it was filed. You're absolutely correct. Okay. And if you look at the complaint, there's nothing in there about those two properties? Only one statement regarding each property that they were invested, that were invested in the property, and that's all it states in the underlying complaint. There's nothing further? Not yet. Your brother has two minutes. We'll let you know if we have a question after that. Thank you very much. Just several brief points, Your Honors. On the duty to defend, we believe the analysis is the traditional Massachusetts analysis if there's a claim, if there's an allegation in the complaint that's reasonably susceptible to an interpretation that it states or sketches a covered claim, then there's a duty to defend. We think that applies to our policy as well. Counsel has argued that there should be a duty to defend even if the professional services exclusion does apply. There's no support for that. No, she says there's language in the professional exclusion or language as to all of the exclusions that says that the exclusions apply to loss. And if you wanted them to apply to duty to defend, you could have said so. Loss includes cost charges and expenses. That is defense costs. The same argument was made in the Liberty Mutual case that the exclusion only applies to liability so it should not apply to... Let's turn back to Judge Saylor's reasoning using that as a model and now reply to her assertion that as to the other two properties, there was no claim made. Or as to the other two properties, it is reasonable to think that the exclusion did not apply there. As to those two properties, we believe it is the case that when you purchase real property, you're engaged in real estate development and property management. When you leverage those properties, you're engaged in real estate development and property management. Does the complaint contain allegations regarding those two properties beyond that they were invested in? They were invested in and there were mortgages taken out. The complaint says that? The complaint says... The complaint... Attleboro Development... They received notice from People's United Bank of the bank's intent to foreclose? You know what? You each send us a 28-J letter, please, as to... within the next seven days as to what the underlying complaint allegations are as to these other two properties. Okay? We can do that, Your Honor. Yes, Your Honor. Yes. Thank you. Do you have anything further? No. Okay. Thank you, Your Honor. Thank you.